+UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------x
                              :
JOANNA D. SANTOS              :    Civil No. 3:16CV01778 (HBF)
                              :
v.                            :
                              :
NANCY A. BERRYHILL, ACTING    :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :    December 13, 2017
                              :
------------------------------x

**RULING ON CROSS MOTIONS[1]**

Plaintiff Joanna Santos brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI) under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act"). Plaintiff has moved to reverse the final decision of the Commissioner of Social Security. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #21]** is **GRANTED**

---

[1] A recommended ruling was filed on December 12, 2017 [Doc. #26]. The Court entered an order vacating the recommended ruling on December 13, 2017, [doc. #27] in light of the parties' consent to proceed before a United States Magistrate Judge [doc. #17] with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

1

in part and **DENIED** in part. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #24]** is **DENIED**.

I. **ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed. Plaintiff filed an application for DIB and SSI on August 23. 2012, alleging disability as of May 2, 2010.[2] [Certified Transcript of the Record, Compiled on January 13, 2017, Doc. #14 (hereinafter "Tr.") 234, 455-58, 459-67]. Plaintiff alleged disability based on pulmonary embolism, heart condition, chronic obstructive pulmonary disease ("COPD"), headaches, temporomandibular joint ("TMJ") disorder, depression, right leg weakness, and diabetes. [Tr. 489]. Plaintiff's claims were denied initially and on reconsideration. [Tr. 234, 360-63, 365-73].

On December 30, 2014, plaintiff, represented by counsel, appeared before Administrative Law Judge ("ALJ") Ronald J. Thomas for an administrative hearing.[3] [Tr. 259-98]. Vocational Expert ("VE") Joseph Goodman, testified by telephone at the hearing. [Tr. 290-96]. On April 20, 2015, ALJ Thomas found that plaintiff was not disabled, and denied her claims. [Tr. 231-58].

---

[2] Plaintiff's last date insured is December 31, 2014. [Tr. 236].
[3] ALJ Thomas held an initial hearing on July 14, 2014, that was adjourned due to a defect in the notice. [Tr. 299-304].

2

Plaintiff's June 22, 2015, request for review of the hearing decision was denied on September 28, 2016. [Tr. 1-4]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse the Commissioner's decision.

## II. STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the

3

Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-

00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that, in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted)(emphasis in original).

**III. SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1). To qualify for supplemental security income, an individual must be eligible on the basis of income and resources. 42 U.S.C. §1381a.

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can

5

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c)(alterations added) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe"); 42 U.S.C. §1382c(a)(3)(B), 20 C.F.R. §416.920(c).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider h[er] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform h[er] past work. Finally, if the claimant is unable to perform h[er] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given h[er] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

**IV. THE ALJ'S DECISION**

Following the above-described five step evaluation process, ALJ Thomas concluded that plaintiff was not disabled under the Social Security Act. [Tr. 234-52]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 2, 2010, the alleged disability onset date. [Tr. 237].

At step two, the ALJ found that plaintiff had the severe medical impairments of obesity; diabetes mellitus type II; pulmonary embolism; degenerative disc disease of the lumbar spine and cervical spine; and recurrent moderate major depression. [Tr. 237]. The ALJ found that plaintiff's diabetic-related pain, numbness and tingling of the hands and occasional episodes of dizziness and syncope were non-severe. [Tr. 237-38].

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal

8

the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 238]. The ALJ specifically considered Listings 1.04 (disorders of the spine), 4.04 (ischemic heart disease), and 12.04 (affective disorder). [Tr. 238-41]. The ALJ also conducted a psychiatric review technique and found that plaintiff had mild restrictions in her activities of daily living and social functioning and moderate difficulties with concentration, persistence, or pace; and no episodes of decompensation of extended duration. [Tr. 239-41].

Before moving on to step four, the ALJ found plaintiff had the RFC to perform

> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she [] can occasionally bend, stoop, twist, squat, kneel, crawl, balance and climb. She requires a work environment that is free from poor ventilation, dust, fumes, gases, odors, humidity, wetness and temperature extremes. The claimant can only have occasional interaction with the public, coworkers and supervisors. Lastly, the claimant is limited to occasional difficulties in concentration on detail and complex tasks.

[Tr. 241].

At step four, the ALJ found plaintiff unable to perform her past relevant work as a certified nurses' aide. [Tr. 250]. At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 250-52].

9

## V. DISCUSSION

On appeal, plaintiff asserts the following arguments in favor of remand.

1. The ALJ's step five determination was not supported by substantial evidence;
2. The ALJ erred in applying the treating physician rule;
3. The ALJ did not properly develop the record; and
4. The ALJ misconstrued the record and failed to consider plaintiff's impairments in combination.

### A. Duty to Develop the Record

ALJ Thomas's decision specifically articulated the findings supporting his decision. However, upon review, the Court finds that the record upon which his decision was based is incomplete and the matter must be remanded for the purpose of gathering additional medical records and reports <u>or</u> to clarify that further records do not exist.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. The duty exists even when the claimant is represented by counsel...." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)(citations omitted); see also Burger v. Astrue, 282 F. App'x. 883, 2008 WL 2595167, * (2d Cir. 2008)(ALJ is obliged to develop the medical record fully in order to accurately assess a plaintiff's RFC, whether or not

plaintiff is represented by counsel). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

Plaintiff argues that she has been receiving mental health treatment since April 23, 2012, and that additional mental health records should have been sought by the ALJ from Southwest Community Health Center ("SWCHC"). [Tr. 1077 (letter from SWCHC therapist stating that since April 23, 2012, plaintiff attended "individual therapy monthly and medication management approximately every 2-3 months.")].

Plaintiff was referred for a psychiatric consultation on March 28, 2012. [Tr. 906, 916 (duplicate), 930 (duplicate); Tr. 905 (a treatment note from April 11, 2012, states "F/U depression" "psych. consult"), 915 (duplicate), 929 (duplicate)]. Treatment records from May 11 and 30, 2012 indicate that plaintiff was started on Wellbutrin XL 150 mg. [Tr. 903 ("continue psych f/u"), 913 (duplicate), 927 (duplicate)); Tr. 902 ("psych apt. today"), 912 (duplicate), 926 (duplicate)]. On July 6, 2012, the treatment records noted

11

plaintiff's dosage of Wellbutrin XL was increased to 300 mg. [Tr. 923].

The record contains a partial Department of Social Services Medical Source Statement form containing Section A, E, F, and G, which was completed by psychiatrist Dr. Charles Alexander.[4] [Tr. 1029-31]. Dr. Alexander assessed that plaintiff was "Markedly Limited," (cannot usefully perform or sustain the activity), in <u>all</u> spheres on the Mental Residual Functional Capacity Assessment. [Tr. 1030]. The doctor opined that plaintiff was not able to work and her conditions were expected to last "12 months or more." [Tr. 1029].

The record also contains two Medical Source Statements signed by Dr. Alexander dated September 5, 2012, with different findings.[5] [Tr. 504-7; 1032-35]. The Statements <u>both</u> indicate that plaintiff was first seen on April 23, 2012 and last seen on August 29, 2012. [Tr. 504, 1032]. The doctor noted, "Client reports depression began 2 years ago when she had pulmonary embolism. Reports crying often, irregular appetite, and bereavement issues from loss of father (4 years ago). Working 2 jobs and still losing her apartment is source of exacerbation."

---

[4] The form contains no signature line but the index indicates that Dr. Alexander completed the form. [Doc. #14-2 at 3].

[5] Neither party addressed this discrepancy.

Id. Both forms state that plaintiff is taking Wellbutrin XL 300 mg., id.; however, one of the forms also lists Abilify 5 mg. and Ambian 10 mg. [Tr. 504]. Plaintiff was casually dressed, alert and oriented x3, engaged and cooperative, normal speech, denied delusions/hallucinations with depressed mood and affect. [tr. 504-5, 1032-33]. On one form, the doctor found plaintiff's "memory good, concentration good, attention appropriate, thought content abstract" [tr. 504] and judgment and insight good [tr. 505], while on another form the doctor found plaintiff's "memory-forgetful, concentration-short, attention-short" [tr. 1032], and "judgment and insight-slight." [Tr. 1033].

In assessing Activities of Daily Living, the doctor found that plaintiff had "no problem" taking care of personal hygiene, and a "slight problem" caring for physical needs and using good judgment regarding safety and dangerous circumstances, and an "obvious problem" using appropriate coping skills to meet ordinary demands of a work environment and handling frustration appropriately. [Tr. 505]. In assessing Task Performance, the doctor found that plaintiff had "no problem" carrying out single-step and multi-step instructions, focusing long enough to finish assigned simple activities or tasks, and changing from one simple task to another and performing basic work activities at a reasonable pace/finishing on time. [Tr. 506].

13

Reviewing the same criteria on the same date on the other form, Dr. Alexander found that plaintiff had a "slight problem" taking care of personal hygiene and caring for physical needs and a "serious problem" using good judgment regarding safety and dangerous circumstances, using appropriate coping skills to meet ordinary demands of a work environment and handling frustration appropriately. [Tr. 1033]. In assessing Task Performance, the doctor found that plaintiff had a "serious problem" carrying out single-step and multi-step instructions, focusing long enough to finish assigned simple activities or tasks, and changing from one simple task to another and a "very serious problem" performing basic work activities at a reasonable pace/finishing on time. [Tr. 1034]. The doctor did not assess the spheres under Social Interaction on either form, stating, "[d]o not know this individual in a social/workplace capacity." [Tr. 506, 1034].

On February 22, 2013, Dr. Alexander and plaintiff's psychotherapist (signature illegible) completed a Treatment Status Report. [Tr. 1036]. The doctor noted he had treated plaintiff since April 23, 2012, she was compliant in treatment and that he sees her "regularly for med. mgmt." Id. Plaintiff's mental health therapist wrote: "Client receiving individual therapy using cognitive behavioral and supportive therapy to deal with depression and chronic pain. Client also receiving medication management." Id.

The next record from Dr. Alexander is dated July 15, 2013, when he saw plaintiff for medication management. [Tr. 1220-1223]. He noted, "Pt. last seen in Feb. has come twice but the wait was too long and 'I had other appointments.' Out of meds for a while-admits she does better [on] meds c/o sadness." [Tr. 1220]. Nevertheless, plaintiff's mental status exam was unremarkable and appropriate in all spheres. [Tr. 1222]. The doctor noted that her mood was euthymic and intact. Id.

A second Department of Social Services Medical Source Statement dated May 30, 2014, was completed by plaintiff's treating physician, Dr. Sanjeev Rao. [Tr. 1069-76]. The doctor stated that plaintiff's medical condition was "complicated and progressively deteriorating"; was expected to last "6 months or more"; and he opined that she would "never" be able to return to work. [Tr. 1069, see tr. 1075 (opining she would be unable to work "12 months or more")]. Dr. Rao assessed that plaintiff was "Moderately Limited," (capacity to perform the activity is diminished), in all spheres on the Mental Residual Functional Capacity Assessment. [Tr. 1071-72]. The doctor found that her "Bipolar Depression/Anxiety" impacted her ability to work. [Tr. 1073].

In evaluating plaintiff's physical capacities, Dr. Rao opined that during an 8-hour workday with normal breaks, plaintiff could sit for one-hour and never stand or walk. [Tr.

15

1076]. The doctor found she could never lift or carry any weight; or use her hands for repetitive actions such as simple grasping, pushing, pulling, fine manipulation; or use her feet repetitively for pushing and pulling leg controls; and never be involved in the following activities: unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, or exposure to dust and fumes. [Tr. 1073-74].

On July 1, 2014, licensed psychotherapist, Nicole Altbaum-Nash, LCSW, provided plaintiff with a letter, at plaintiff's request, regarding her mental health treatment at SWCHC. [Tr. 1077]. Ms. Altbaum-Nash wrote,

> Joanna Santos, D.O.B 4/8/67, has been receiving treatment for Major Depression Recurrent Moderate at Southwest Community Health Center since 4/23/12. Joanna attends individual therapy monthly and medication management approximately every 2-3 months. Joanna has consistently reported depressed mood, crying spells, and isolating. She explains these symptoms are triggered by her ongoing chronic pain and fatigue issues.

[Tr. 1077]. On that same date, plaintiff saw Ms. Altbaum-Nash for individual therapy. Plaintiff reported that she was living with her boyfriend, who "gets her out of the house frequently and she is able to spend time relaxing at the park or the beach." [Tr. 1224]. "Client also reports some improvement due to having her own place at this time rather than staying with her mother. Client has not seen the psychiatrist and it is unclear

16

if she wants psychiatric medications at this time." [Tr. 1224-25]. Plaintiff's mental status was unremarkable and appropriate in all spheres. [Tr. 1225]. There were no other individual therapy or medication management treatment notes in the record from Ms. Altbaum-Nash, Dr. Alexander, or any other mental health provider after July 1, 2014.

There are only sporadic medication management notes from doctors in the record and virtually no contemporaneous individual therapy notes from her treating psychotherapists at SWCHC from April 2012 through December 2014, the two-year period that elapsed between plaintiff's application (August 23, 2012) and her hearing date (December 30, 2014). The ALJ was aware of this fact, noting that "[t]he evidence of record notes very few treatment records for depression or any additional mental health impairments." [Tr. 247]. As such, the record upon which the ALJ's determination was made is insufficient. See Lamorey v. Barnhart, 158 F. App'x. 361, 362 (2d Cir. 2006) (where ALJ fails to adequately develop the record by requesting treating physician's notes, remand for further proceedings is usually appropriate). That said, it is unclear whether treatment was rendered as represented in the September 5, 2012 Medical Source Statements, February 22, 2013 Treatment Status Report, and July 1, 2014, letter; thus, remand is appropriate to determine if records exist. Compare Tr. 504-07, 1032-35, 1036, 1077 with Tr.

17

1220 (in July 2013, doctor noting that plaintiff was off psychiatric medication and had not seen the doctor in 5 months); 1224-25 (therapist noting in July 2014 that plaintiff has not seen the psychiatrist in several months).

## IV. CONCLUSION

For the reasons stated, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #21]** is **GRANTED** in part and **DENIED** in part. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #24]** is **DENIED**.

The Commissioner's decision that plaintiff, Joanna D. Santos, was not disabled is reversed, and the matter is remanded for further proceedings. Upon remand, the Commissioner is instructed to gather medical records and request medical source statements and/or RFC reports from all of plaintiff's treating physicians and to redetermine plaintiff's disability status upon as full and complete a record as possible. Further, on remand the Commissioner shall address the other claims of error not addressed herein.

The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge or Magistrate Judge who issued the Ruling that remanded the case.

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge [doc. #17] on February 10, 2017, with appeal to the Court of Appeals.  Fed. R.

Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport this 13th day of December 2017.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE